**[NOT FOR PUBLICATION]**

**[39, 43, 57, 74]**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ROCHE PALO ALTO LLC, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 06-cv-2003 (FLW) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| RANBAXY LABORATORIES LIMITED | : | |
| et al. | : | |
| | : | **OPINION** |
| Defendants. | : | |
| | : | |
| | : | |

**WOLFSON, United States District Judge**

Presently before the Court is the Motion of Defendants, Ranbaxy Laboratories Limited

and Ranbaxy Inc., (collectively referred to as "Ranbaxy"), for Summary Judgment of Invalidity

for Improper Inventorship on Plaintiff Roche Palo Alto LLC ("Roche")'s United States Patent,

No. 6,083,953 (the "953 Patent"). Ranbaxy argues that the '953 Patent is invalid because the

patent originally issued with improper inventorship and was not corrected until a Certificate of

Correction was obtained after the commencement of this litigation. The parties disagree whether

the Certificate of Correction was issued pursuant to 35 U.S.C. § 254 (given prospective effect

and is the vehicle used to correct errors made by the United States Patent and Trademark Office

("USPTO") in issued patents) or 35 U.S.C. § 256 (given retroactive effect and is the vehicle used to correct inventorship errors).  The Court finds that it is unclear from the record whether the USPTO issued the Certificate of Correction pursuant to Section 254 or 256.  However, Defendants' Motion must still fail, because when a Certificate of Correction is issued for the sole purpose of correcting inventorship, it is proper to treat such Certificate of Correction under Section 256 and give it retroactive effect.  To do otherwise would produce an anomalous result, inconsistent with the applicable statutory framework and public policy rationales promulgated by federal courts.  Accordingly, the Court denies Ranbaxy's Motion for Summary Judgment of Invalidity for Improper Inventorship

## I.    BACKGROUND

On March 4, 1997, Roche filed U.S. Patent Application No. 08/812,991 (the "991 Application"), entitled "2-(2-AMINO-1,6-DIHYDRO-6-OXO-PURIN-9-YL) METHOXY-1, 3-PROPANEDIOL DERIVATIVE."  (Pl.'s Opp'n Fact St. ¶ 12; Def.'s Reply Fact St. ¶ 12).  The 991 Application identified John J. Nestor, Scott W. Womble, and Hans Maag as joint inventors. (Jeffrey Z.Y. Liao,  Esq., Decl. August 17, 2007, Ex. 9 at R0043991-91, R0043991-92).  On July 14, 1999, the examiner allowed claims 23-28 of the 991 application, which became claims 1-6 of the '953 Patent. (Liao Decl. Ex. 9 at R0043851)  On October 14, 1999, before the patent issued, Roche noticed that the inventorship of the patent application was incorrect, and filed an amendment and petition to add inventors under 37 C.F.R. § 1.48(a).[1]  (Pl.'s Fact St. ¶ 15; Def.'s Fact St. ¶ 15).  The amendment and petition sought to add Charles A. Dvorak and Paul R.

---

[1]Internal Roche documents confirm and Roche concedes that the proper inventorship "should include . . . five names." (Pl.'s Opp'n Fact St. ¶ 31; Def.'s Reply Fact St. ¶ 31).

Fatheree as additional inventors of the claimed subject matter.  (Pl.'s Opp'n Fact St. ¶ 16; Def.'s Reply Fact St. ¶ 16).  In addition to the Rule 48 Petition, an Amendment under 37 CFR § 1.312(a) was also mailed to the USPTO on October 14, 1999, and received on October 18, 1999, which amended the specification and claims. (Liao Decl. Ex. 9 at R0043847-48).  On March 10, 2000, the USPTO indicated that the Amendment under 37 CFR § 1.312 had been entered. (Liao Decl. Ex. 9 at R0043821).

The '953 Patent issued on July 4, 2000, naming only three inventors.  On November 30, 2000, Roche sent a Status Inquiry to the USPTO indicating it still had not received any decision on the Rule 48 Petition, inquiring into the status of that petition, and requesting that the petition be granted, the amendment entered, and an appropriate notice be issued so that the change of inventorship would be properly noted in the public record.  (Liao Decl. Ex. 9 at R0043800-801).  On or about the time of the Status Inquiry, patent examiner Mark Berch noted in the margin of the Rule 48 Petition with his initials "MB" and date "11/00" that the Petition was "OK to Enter" (Liao Decl. Ex. 16).  On December 28, 2000, approximately one month later, the USPTO acknowledged the Amendment and Petition To Add Inventors, under 37 CFR 1.48(a), by mailing to Derek Freyberg, the attorney of record of applicants of the 991 Application, a Corrected Filing Receipt naming John J. Nestor, Scott W. Womble, Hans Maag, Charles A. Dvorak, and Paul A. Fatheree as joint inventors. (Liao Decl. Ex. 9 at R0043798-99).  However, the USPTO failed to correct the inventorship on the face of the patent.

On May 17, 2001, Roche mailed a request for a Certificate of Correction under 37 C.F.R. §1.322 ("Rule 322 petition") to correct the omission of inventors Charles A. Dvorak and Paul R.

Fatheree from the face of the issued patent. (Pl.'s Opp'n Fact St. ¶ 23; Def.'s Reply Fact St. ¶

23).  On May 21, 2001, the USPTO received the request.  Id.  The USPTO again took no action.

   Roche sued Ranbaxy for alleged infringement of the '953 Patent on April 28, 2006, and

filed an Amended Complaint on August 15, 2006.  (Pl.'s Opp'n Fact St. ¶ 37; Def.'s Reply Fact

St. ¶ 37).  On June 26, 2007, David Fitzgerald, counsel for Roche, faxed to Michelle Williams,

an employee of the Corrections Branch of the Office of Patent Publication of the USPTO, copies

of the Status Inquiry dated November 30, 2000, and the Corrected Filing Receipt.  (Liao Decl.

Ex. 11).  The deposition testimony of Roche's researchers confirmed that, at the time of their

testimony, the '953 Patent did not name the complete list of inventors on its face. (Pl.'s Opp'n

Fact St. ¶ 25; Def.'s Reply Fact St. ¶ 25; Liao Decl. Ex. 10).  A Certificate of Correction issued

on July 24, 2007 naming all five inventors:  John Joseph Nestor, Scott William Womble, Hans

Maag, Charles A. Dvorak and Paul A. Fatheree.  (Pl.'s Opp'n Fact St. ¶ 25; Def.'s Reply Fact St.

¶ 25).

## II.   SUMMARY JUDGMENT STANDARD

   A party seeking summary judgment must "show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ.

P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co.,

223 F.3d 202, 204 (3d Cir. 2000).  In deciding whether summary judgment should be granted, the

Court considers "pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits," Fed. R. Civ. P. 56(c), and construes all facts and inferences in the

light most favorable to the nonmoving party.  Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir.

2002).  The Court's function "at the summary judgment stage . . . is not . . . to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  To successfully defend

against a motion for summary judgment, a plaintiff cannot merely rely on the unsupported

allegations of the complaint, and must present more than the "mere existence of a scintilla of

evidence" in his favor.  Id. at 252. F

## III.    DISCUSSION

### A.    PRESUMPTION OF VALIDITY WHEN A PATENT IS CHALLENGED FOR IMPROPER INVENTORSHIP

A person is entitled to a patent unless he himself did not invent the subject matter sought

to be patented. 35 U.S.C. § 102(f).   "Omission of an inventor can invalidate a patent unless the

omission was an error 'without any deceptive intention.'"  Acromed Corp. v. Sofamor Danek

Group, Inc., 253 F.3d 1371, 1379 (Fed. Cir. 2001) (quoting 35 U.S.C. § 256) (citations omitted).

However, every issued patent enjoys a presumption of validity.  See 35 U.S.C. § 282.  "Intent to

mislead or to deceive must be proved by clear and convincing evidence . . . .  Deceptive intent is

not inferred simply because information was in existence that was not presented to the

examiner."  C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1365 (Fed. Cir. 1998) (citation

omitted), cert. denied, 526 U.S. 1130 (1999).  Thus, "in order to rebut [the] presumption [of

validity], a party challenging patent validity for omission of an inventor must present clear and

convincing evidence" that shows the patent is invalid. Acromed, 253 F.3d at 1379 (citing

Environ Prods. v. Furon Co., 215 F.3d 1261, 1265 (Fed. Cir. 2000)).

### B.    CORRECTION OF NAMED INVENTOR UNDER 35 U.S.C. § 256

In the landmark case of Pannu v. Iolab, the Federal Circuit discussed the intricacies of

correcting improper inventorship.  See generally, Pannu v. Iolab,155 F.3d 1344 (Fed. Cir. 1998).
To be valid, a patent must list the correct inventors of a claimed invention.  Id. at 1348-49.
Indeed, where the facts clearly demonstrate omission of an actual inventor from a patent, the
court must declare the patent invalid.  Id. at 1349.  A party challenging the validity of a patent
under Section 102(f) must show incorrect inventorship by clear and convincing evidence.  Id.;
see Hess v. Advanced Cardiovascular Sys., Inc., 106 F.3d 976, 980 (Fed. Cir.1997) (stating that
"'the burden of showing misjoinder or nonjoinder of inventors is a heavy one and must be proved
by clear and convincing evidence' " (quoting Garrett Corp. v. U.S., 422 F.2d 874, 880 (1970))),
cert. denied, 520 U.S. 1277 (1997).

        "However, in cases of misjoinder and nonjoinder the operation of section 102(f) is
ameliorated by Section 256."  Id. at 1350; see MCV, Inc. v. King-Seeley Thermos Co., 870 F.2d
1568, 1570 (Fed. Cir. 1989) ("Before the enactment of section 256, patentees and their assignees
committed inventorship errors at their peril; misjoinder or nonjoinder of an inventor rendered the
patent invalid. Section 256 affords the opportunity to correct the patent."); see also S. Rep. No.
82-1979, at 7-8 (1952), reprinted in 1952 U.S.C.C.A.N. 2394, 2401-02 ("Very often two or three
people make an invention together. They must apply as joint inventors. If they make a mistake in
determining who are the true inventors, they do so at their peril. This provision permits a bona
fide mistake in joining a person as [an] inventor or in failing to join a person as an inventor to be
corrected.").

        Section 256 provides in pertinent part:

                Whenever through error a person is named in an issued patent as the
        inventor, or through error an inventor is not named in an issued patent and such
        error arose without any deceptive intention on his part, the Director may, on

-6-

application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section.  The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256.

When a party asserts invalidity under § 102(f) due to nonjoinder, a district court should first determine whether there exists clear and convincing proof that the alleged unnamed inventor was in fact a co-inventor. Upon such a finding of incorrect inventorship, a patentee may invoke Section 256 to save the patent from invalidity. Accordingly, the patentee must then be given an opportunity to correct inventorship pursuant to that section.  Nonjoinder may be corrected 'on notice and hearing of all parties concerned' and upon a showing that the error occurred without any deceptive intent on the part of the unnamed inventor.

Pannu,155 F.3d at 1350; see 35 U.S.C. § 256; Stark v. Advanced Magnetics, Inc., 119 F.3d 1551, 1555 (Fed. Cir. 1997) ("[T]he section allows addition of an unnamed actual inventor, but this error of nonjoinder cannot betray any deceptive intent by that inventor."); see also P.J. Federico, Commentary on the New Patent Act, 35 U.S.C.A. 1, 50 (1954), reprinted in 75 J. Pat. & Trademark Off. Soc'y 163, 211 (1993) ("[N]onjoinder of joint inventors shall not invalidate a patent if the mistake is one that can be corrected under the [sic., this] section, that is, arose by error and without deceptive intention, and gives a court authority to order correction.").

Moreover, the Federal Circuit has declared that "[a]bsent fraud or deceptive intent, the correction of inventorship does not affect the validity or enforceability of the patent for the period before the correction."  Viskase Corp. v. American Nat'l Can Co., 261 F.3d 1316, 1329 (Fed. Cir. 2001); see also Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc., 134 F.3d 1085, 1088-89 (Fed. Cir. 1998) (granting a preliminary injunction based on a patent subject to an

inventorship challenge, based on a finding that, even if an error in naming inventors was shown, the patentee would have the opportunity to correct the error anyway); cf., <u>Stark</u>, 119 F.3d at 1554-56.

Furthermore, the frequently referenced Manual of Patent Examining Procedure (MPEP),[2] states that "correction of inventorship should be effected under the provisions of 35 U.S.C. § 256 and 37 CFR § 1.324 by filing a request for a Certificate of Correction if:  (A) the only change being made in the patent is to correct the inventorship; and (B) all parties are in agreement and the inventorship issue is not contested."  MPEP §1412.04 at p. 1400-28.  The text then refers to "MPEP § 1481 for the procedure to be followed to obtain a Certificate of Correction for correction of inventorship."  <u>Id.</u>

Notably, MPEP § 1481.02 states that "[w]hile a request under 37 C.F.R. § 1.48 is appropriate to correct inventorship in a nonprovisional application, a petition under 37 C.F.R. § 1.324 is the appropriate vehicle to correct inventorship in a patent . . . . Similarly, if a request under 37 C.F.R. § 1.48(a), (b), or (c) is filed in a pending application but not acted upon until after the application becomes a patent, the request may be treated as a petition under 37 C.F.R. § 1.324, and if it is grantable, form paragraph 10.14 set forth below should be used."[3]  MPEP

---

[2]The MPEP does not have the force of law or the force of the rules in Title 37 of the Code of Federal Regulations, however it is "published to provide USPTO patent examiners, applicants, attorneys, agents, and representatives of applicants with a reference work on the practices and procedures relative to the prosecution of patent applications before the USPTO.  It contains instructions to examiners, as well as other material in the nature of information and interpretation, and outlines the current procedures which the examiners are required or authorized to follow in appropriate cases in the normal examination of a patent application."  See MPEP at Foreword.

[3]Paragraph 10.14 "Treatment of Request Under 37 C.F.R. § 1.48 Petition Under 37 C.F.R. § 1.324, Petition Granted" sets forth the following form:

§1481.02 at p. 1400-90.

### C.     CORRECTION OF USPTO MISTAKE UNDER 35 U.S.C. § 254

Section 254 sets forth the statutory framework for correcting an error made by the

USPTO in an issued patent.  See 35 U.S.C. § 254.  Section 254 provides in pertinent part:

> Whenever a mistake in a patent, incurred through the fault of the Patent and
> Trademark Office, is clearly disclosed by the records of the Office, the Director
> may issue a certificate of correction stating the fact and nature of such mistake,
> under seal, without charge, to be recorded in the records of patents. A printed
> copy thereof shall be attached to each printed copy of the patent, and such
> certificate shall be considered as part of the original patent. Every such patent,
> together with such certificate, shall have the same effect and operation in law on
> the trial of actions for *causes thereafter arising* as if the same had been originally
> issued in such corrected form. The Director may issue a corrected patent without
> charge in lieu of and with like effect as a certificate of correction.

35 U.S.C. § 254 (emphasis added).  Consistent with the statutory language, and unlike Section

_____

In re Patent No. [1]:

Issue Date: [2]: DECISION

Appl. No.: [3]: GRANTING

Filed: [4]: PETITION

For: [5]: 37 C.F.R. § 1.324

This is a decision on the request under 37 C.F.R. § 1.48, filed [6]. In view of the fact that
the patent has already issued, the request under 37 C.F.R. § 1.48 has been treated as a
petition to correct inventorship under 37 C.F.R. § 1.324.

The petition is granted.

The patented file is being forwarded to Certificate of Corrections Branch for issuance of a
certificate naming only the actual inventor or inventors.

MPEP § 1481.02 at p. 1400-91.

256, the Federal Circuit held, in an issue of first impression, that Certificates of Correction obtained pursuant to Section 254 are prospective, and thus, only apply to causes of action filed after the issuance of a Certificate of Correction.  Southwest Software, Inc., v. Harlequin, Inc., 226 F.3d 1280, 1297, 1299 (Fed. Cir. 2000).

In MPEP § 1480, the USPTO sets forth the procedure for correcting a patent pursuant to Section 254 and its corresponding regulations at 37 C.F.R. § 1.322.  MPEP § 1480 at p. 1400-86 to 1400-87.  The USPTO procedure for correcting a mistake under Section 254 is much more open and less specific than those promulgated for Section 256, however the MPEP does advise that the request be submitted on Certificate of Correction Form, PTO/SB/44 (also referred to as PTO 1050).

### D.   ANALYSIS

The parties in this case contest whether the July 24, 2007 Certificate of Correction was issued pursuant to Section 254 or 256.  Ranbaxy argues in its reply papers that the Certificate of Correction was issued pursuant to Section 254 and urges the Court to follow the Southwest Software, Inc. line of cases, which held that a Certificate of Correction pursuant to Section 254 only applies prospectively.  Roche argues that the Certificate of Correction was issued pursuant to 256 and that the Court should follow Pannu v. Iolab and its progeny, which allows retroactive application of a Certificate of Correction for correction of inventorship.  The Court finds that because:  (1) correction of inventorship is directly addressed by Section 256; (2) the USPTO made an inadvertent mistake by not entering the original Rule 1.48 Petition in a timely manner; and (3) it is unclear from the record whether the USPTO issued the Certificate of Correction pursuant to Section 254 or Section 256, it is proper for the Court to treat the July 24, 2007

Certificate of Correction pursuant to Section 256.[4]

**1.    '953 PATENT PROSECUTION HISTORY**

The issue of whether the July 24, 2007 Certificate of Correction was issued pursuant to Section 254 or Section 256 is conflated because Roche filed two separate petitions with the USPTO, one under each section.  The first petition was received by the USPTO on October 18, 1999 and was sent before the '953 Patent issued.  (Pl.'s Opp'n Fact St. ¶ 17; Def.'s Reply Fact St. ¶ 17).  The petition was made pursuant to Rule 1.48(a), which is the proper vehicle to change improper inventorship prior to a patent issuing.  37 C.F.R. § 1.48(a).  The Rule 1.48(a) Petition was not acted upon and the '953 Patent eventually issued July 4, 2000.  As discussed infra p. 8, a Rule 1.48(a) Petition may be converted to a 1.324 Petition under Section 256, if the Rule 1.48(a) Petition has not been entered and the patent subsequently issues.  On November 30, 2000, Roche sent a Status Inquiry to the USPTO indicating it still had not received any decision on the Rule 48 Petition and requested that the petition be granted. (Liao Decl. Ex. 9 at R0043800-801).  While the USPTO acknowledged the request as "OK to Enter," and even sent a Corrected Filing Receipt naming all five inventors to Roche, the USPTO yet again failed to enter the correction of inventorship on the actual patent. (Liao Decl. Ex. 16; Liao Decl. Ex. 9 at R0043798-99).

On May 17, 2001, Roche sent a second petition to the USPTO pursuant to Section 254 "Correction of USPTO Mistake" under 37 C.F.R. § 1.322 ("Rule 322 petition") to correct the

---

[4]Ranbaxy correctly notes in its reply brief that a correction of inventorship could have also been effected by a reissue application.  (Defs.' Rep. Br. at p. 3).  However, it would have been inappropriate in the current situation because a reissue under 35 U.S.C. § 251 should only be used by a patentee to correct inventorship where 35 U.S.C. § 256 is inadequate.  See Ex parte Scudder, 169 U.S.P.Q. 814, 815 (Bd. App. 1971); A.F. Stoddard & Co. v. Dann, 564 F.2d 556, 567 n.16 (D.C. Cir. 1977).

omission of inventors Charles A. Dvorak and Paul R. Fatheree from the face of the issued patent, which was received by the USPTO on May 21, 2001.  Once more,  no action was taken by the USPTO.  On June 26, 2007, Roche again contacted the USPTO and faxed the November 30, 2000 Status Inquiry and Corrected Filing Receipt.  (Liao Decl. Ex. 11).  Finally, a Certificate of Correction was issued on July 24, 2007, naming all five inventors, however the form of the Certificate of Correction did not appear to be consistent with a Certificate of Correction issued pursuant to a  1.324 Petition as specified by MPEP § 1481.02.

Ranbaxy argues in its reply brief that Roche's patent was corrected under Section 254. To support that contention it relies on USPTO procedure set forth in the MPEP and uses the supporting record as provided in the prosecution history of the '953 Patent.  Specifically, MPEP § 1481.02 provides language that should be used when effecting a Certificate of Correction pursuant to Section 256 in a 1.324 Petition.  See infra n. 3 at p.8.  As Ranbaxy points out, none of the suggested language was used in the July 24, 2007 Certificate of Correction.  (See Liao Ex. 10, Certificate of Correction).  In addition, USPTO procedure notes that "[p]etitions to correct inventorship of an issued patent are decided by the Supervisory Patent Examiner."  MPEP § 1481.02 Examiner n. 1 at p. 1400-91.  It does not appear from the record that the Supervisory Patent Examiner approved the Certificate of Correction since his or her signature was not included in the Certificate. (Liao Decl. Ex. 10).  In fact, the Certificate of Correction is substantively identical with the Rule 322 Petition Roche filed pursuant to Section 254, right down to the wrong middle initial in Paul Fatheree's name.  (Compare Ragan Decl. Ex. D with Liao Decl. Ex. 10).   However, the Court notes that this error in the middle initial was also present in the filing receipt that the USPTO sent to Roche after the first petition was made.  (See

-12-

Liao Decl. Ex. 11).  As such, the error in the middle initial is not dispositive as to whether the

USPTO acted under Section 256 or Section 254.  Although, the facts suggest that the patent

examiner may have acted in accordance with a 1.322 Petition pursuant to Section 254 and not a

1.324 Petition pursuant to Section 256, the record does not yield a clear conclusion.

### 2.    RETROACTIVE V. PROSPECTIVE EFFECT OF THE CERTIFICATE OF CORRECTION

Thus, to decide the extant issue, the prospective or retrospective effect of the correction

of inventorship through a Certificate of Correction, the Court turns to the statutory framework

mandated by Congress for the correction of an issued patent.[5]  "To determine Congressional

intent, we begin, of course, with the language of the statutes at issue.  However, to fully

understand the meaning of the statute, we look 'not only to the particular statutory language, but

to the design of the statute as a whole and to its object and policy.'" Associated Elec. Co-op., Inc.

v. U.S., 226 F.3d 1322, 1326 (Fed. Cir. 2000) (quoting Crandon v. U.S., 494 U.S. 152, 158

(1990)).

In this case, the interplay between Section 254 and 256 is at issue.[6]  Section 254 is an

overarching section, which allows patentees to request the correction of an existing patent when

such correction is necessary due to the mistake of the USPTO.  35 U.S.C. § 254.  Section 256 is

much more specific and deals with the narrow subset of circumstances where the inventorship of

---

[5]Ranbaxy also presents evidence, in the form of a survey of recent patents, that the USPTO has effected changes of inventorship through a 1.322 Petition under Section 254 for other patents, however the fact that the USPTO has allowed a change of inventorship under Section 254 does not negate the intent of Congress to effect such changes under Section 256 nor can it disregard the strong public policy rationale for making a change of inventorship retroactive in effect.  (See Colman B. Ragan, Esq., Second Decl., September, 6, 2007, Ex. 1, 2, 3, 4).

[6]Neither party cites to the legislative history of Section 254 or 256.

an issued patent is improper and must be corrected.  35 U.S.C. § 256.  The very notion that

Congress carved out a separate section for correction of inventorship indicates its intention to

treat it in a different way than the much larger subset of corrections that Section 254

encompasses.  Thus, here the canon of statutory interpretation known as *generalia specialibus*

*non derogant* (general provisions do not qualify specific ones) is applicable.  See, e.g., Mattel,

Inc. v. Barbie-Club.com, 310 F.3d 293, 300-01 (2d Cir. 2002) (the court applied the statutory

canon where application of the broad section would essentially consume the narrower reach of

the subsection); cf., Williams v. U.S., 327 U.S. 711, 718 n.17 (1946) (the court used the statutory

canon so that the more specific enactment of congress rather than the more general previous

enactment was applied); Rodgers v. U.S., 185 U.S. 83, 88-89 (1902) (the court used the statutory

canon finding that a later statute, general in its terms and not expressly repealing a prior special

statute, will ordinarily not affect the special provisions of such earlier statute); In re Albert

Dickinson Co., 104 F.2d 771 (7th Cir. 1939) (the court used the statutory canon applying the

more specific section of the statutory framework to allow appeals from orders fixing

compensation or disbursements to attorneys who render services);  Strong Pub. Co. v. Comm'r of

Internal Revenue, 56 F.2d 550 (7th Cir. 1932) (the court applied the statutory canon to the tax

code where the first three subdivisions of the income tax statute provision respecting invested

capital deal with tangible property only, and following two subsections deal specifically with

intangible property).  If this Court were to hold to the contrary, that a change in inventorship,

normally given retroactive effect under Section 256 was going to be treated prospectively under

Section 254 due to an anomaly in USPTO procedure, it would put form over substance and

completely negate the obvious statutory construction and rationale of the sections at issue.

-14-

Ranbaxy relies on a litany of cases holding that a Certificate of Correction under Section 254 only applies prospectively, and hence, does not extend to causes of action filed after the issuance of the certificate.  However, every single one of those cases is inapposite to the present case because none of them are directed toward correction of inventorship.  In Southwest Software, the Court held that when the USPTO omitted a 330 page Program Printout Appendix from the patent specification, the Certificate of Correction issued pursuant to Section 254 had to be applied prospectively.  226 F.3d at 1294, 1296.  Similarly, in Intel Corp. v. Altima Comm'ns, Inc., 275 F. Supp. 2d 1236 (E.D. Cal 2003), the court held that when the USPTO made an error in which a dependent claim failed to specify upon which claim it depended, the Certificate of Correction issued pursuant to Section 254 must be applied prospectively.  Finally, in Karol v. Burton Corp., 234 D. Supp. 2d 450, (D. Vt. 2002), the court held that correcting an error by deleting a phrase appearing in three claims of an issued patent by a Certificate of Correction must be applied prospectively.

Southwest Software, Intel Corp., and Karol all regarded a substantive change to the patent at issue through a Certificate of Correction.  The courts did not allow the Certificates of Correction to apply retroactively because the corrections changed the substance of the patent, and as such failed to put the public on notice of the new boundaries of the patented invention set forth in the Certificate of Correction.  This is not the case with a correction of inventorship and that is why Ranbaxy was unable to cite to a single case that has held that a Certificate of Correction to correct inventorship must be applied only prospectively.

To the contrary, there are many federal cases that have given retrospective effect to a Certificate of Correction when it regards correction of inventorship, albeit all of these cases

involve petitions under Section 256.  But, that is the section which Congress intended to control

such corrections, and as such, the most common vehicle used.  Moreover, courts have recognized

that obtaining a Certificate of Correction from the USPTO under Section 256 in response to a

litigation challenge of invalidity for incorrect inventorship under Section 102(f) has often been

used and upheld as a proper means of overcoming the inventorship issue.  See, e.g., Winbond

Electronics Corp. v. Int'l Trade Comm'n, 262 F.3d 1363, 1373 (Fed. Cir. 2001) (after ITC found

patent "unenforceable for failure to name an inventor," patentee sought and obtained correction

of inventorship, returned to the ITC, and successfully enforced patent against infringer); Nichols

Institute Diagnostics v. Scantibodies Clinical Lab., 218 F. Supp. 2d 1243, 1248 (S.D. Cal. 2002)

(patentee acted properly by seeking and obtaining correction of inventorship in USPTO after

accused infringer moved for summary judgment of invalidity under section 102(f)); E-Z Bowz,

LLC v. Prof'l Prod. Research Co., 2003 U.S. Dist. Lexis 15364, at **19, 51-53 (S.D.N.Y. 2003)

(patentee acted properly by seeking and obtaining correction of inventorship in USPTO by a

1.324 Petition after accused infringer moved for summary judgment of invalidity under section

102(f)).  Thus, the Court finds that even if the USPTO issued the Certificate of Correction as

though it were a 1.322 Petition, and inadvertently ignored the prior Rule 1.48 Petition that would

have been effected as a 1.324 Petition under Section 256, the equities and realities of the

situation dictate that the certificate be treated as a 1.324 petition pursuant to Section 256 and be

given retroactive effect.

    This result is consistent with the intent of congress, federal case law, and good public

policy.  The inequity of a contrary holding is evident when considering what would have

happened had Roche failed to file any petition to correct the improper inventorship of the '953

Patent.  Under the current jurisprudence of the Federal Circuit, promulgated in <u>Pannu</u> and

<u>Viskase Corp.</u>, infra pp. 5-8, Roche would be entitled to an opportunity to correct inventorship

through the district court, even if it did absolutely nothing to correct the improper inventorship

beforehand.  The Court would subsequently hold a hearing to determine if the omission was an

error without deceptive intention.  To invalidate the patent Ranbaxy would have the burden of

proving by clear and convincing evidence that the omission was made with deceptive intent.  <u>See</u>

<u>Pannu</u>,155 F.3d at 1350.  If that high burden of proof could not be met by Ranbaxy, then the

correction in inventorship would be given retroactive effect.  <u>See</u> <u>Viskase Corp.</u>, 261 F.3d at

1329; <u>see also</u> <u>Canon Computer Sys., Inc.</u>, 134 F.3d at 1088-89.  Here, no such hearing is

necessary because the Certificate of Correction was already made – indeed Roche's attempts to

achieve correction spanned years of follow-up with the USPTO.  Ranbaxy does not even allege

that the omission was made with deceptive intent.  Thus, the Court holds that the July 24, 2007

Certificate of Correction must be given retroactive effect and denies Ranbaxy's Motion for

Summary Judgment for Improper Inventorship.

## IV.     CONCLUSION

In conclusion, the Court denies Ranbaxy's Motion for Summary Judgment for Improper

Inventorship on the '953 Patent because Roche has properly sought and obtained a Certificate of

Correction to correct its improper inventorship.  Furthermore, the Court holds that the July 24,

2007 Certificate of Correction issued for correction of inventorship has retroactive effect.  An

appropriate Order will follow.


Dated: March 17, 2008

s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge